UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

DAVID G HENRY,

                    Plaintiff,

          v.

RON KOMAROVSKY; BRYNN CELLAN;

CITY OF TACOMA,

                    Defendants.

Case No. 3:22-cv-05523-TMC

ORDER GRANTING DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT

## I.    INTRODUCTION

On January 6, 2021, Plaintiff David Henry was involved in a traffic accident at an intersection in the City of Tacoma. Defendant Officers Komarovsky and Cellan responded to the accident and later arrested Mr. Henry for driving under the influence. Witnesses told them they saw Mr. Henry run a red light and collide with another vehicle passing through a green light on the intersecting road. Officer Komarovsky questioned Mr. Henry about his whereabouts and recent alcohol and cannabis use. Mr. Henry initially told the officer he was coming from downtown, then said he was coming from near the casinos, and then disclosed that he was coming from buying cannabis. Mr. Henry next told the officer he last smoked cannabis the day before, but then pivoted to say that actually, he last smoked a year earlier. Mr. Henry struggled to

balance on field sobriety tests, but a preliminary breath test indicated his blood alcohol content was 0.00. Officer Komarovsky arrested Mr. Henry for driving under the influence, patted him down at the patrol vehicle, and brought him to the police station to apply for a warrant to draw blood for testing. The warrant was granted. After taking the blood test at a nearby hospital, Mr. Henry was booked into jail and charged with driving under the influence. When the blood test results came back months later, the City dismissed the charges against Mr. Henry.

Mr. Henry, who has done an admirable job representing himself, brings claims of excessive force, false arrest and imprisonment, and malicious prosecution against Officers Komarovsky and Cellan and the City of Tacoma. Dismissal of charges against Mr. Henry indicates he was not intoxicated, and the officers were mistaken. Undergoing arrest, investigation, and prosecution for charges a person has not committed causes real harm. The Court does not take that harm lightly. But an officer need not prove a person's guilt before arresting them. Not every mistaken arrest violates the Constitution; the law allows some room for error in making difficult decisions. Here, Mr. Henry caused a serious traffic accident by inexplicably driving through a red light. He raised doubt about his cannabis use by responding to the officer's questions inconsistently. And he struggled to balance when performing field sobriety tests. Together, these facts created probable cause for arrest and prosecution. Additionally, indisputable body-worn camera footage contradicts Mr. Henry's allegations of excessive force. Accordingly, the Court GRANTS Defendants City of Tacoma, Ron Komarovsky, and Brynn Cellan's motion for summary judgment (Dkt. 118). The parties' motions in limine (Dkt. 124, 137) are DENIED as moot.

## II.    BACKGROUND

On January 6, 2021, Tacoma Police Officers Komarovsky and Cellan responded to a traffic accident involving David Henry. Footage from Officer Komarovsky's body-worn camera

captures most of the interaction between Mr. Henry and the officers. Upon arriving at the scene of the accident, Officer Komarovsky approached Mr. Henry and asked him what happened. Dkt. 119-1 at 0:44. Mr. Henry responded that he saw the light turn green, drove straight ahead, and then collided with a vehicle crossing the intersection. *Id.* at 0:50–1:00. Officer Komarovsky then spoke with Brian Woodard, a passenger riding in the other vehicle involved in the collision, who said that his vehicle was crossing the intersection at a green light and collided with Mr. Henry's vehicle when it pulled straight forward into the middle of the road after stopping in the center lane. *Id.* at 2:50–3:14. Officer Komarovsky then interviewed an eyewitness, Shane Woods, who said Mr. Henry's vehicle passed another vehicle stopped at the red light, then crossed through the red light, and struck a vehicle driving through the intersection. *Id.* at 11:04–11:40.

Officer Komarovsky then spoke with Mr. Henry once again:

K: Where are you coming from?
H: Uh, downtown.
K: Where at downtown?
H: I was by the casinos.
K: Did you have a couple of drinks at the casinos?
H: I wasn't drinking.
K: What were you doing down there?
H: I was buying some weed. Yea, that's what I was doing.
K: Did you smoke a little bit afterward?
H: No.
K: When was the last time you smoked?
H: Yesterday. I got it still in the pack.
K: How much?
H: I don't know. Actually, I didn't even smoke yesterday.
K: Do you usually smoke?
H: No.
K: So, if not yesterday, when was the last time you did smoke?
H: A year ago.
K: So only now you're coming back to smoking.
H: Yea.

*Id.* at 12:17–13:08.

Mr. Henry then took a series of voluntary Standardized Field Sobriety Tests, including the Horizontal Gaze Nystagmus (HGN) test, the walk and turn test, and the one leg stand test. *Id.* at 16:04–21:05. The body-worn camera video shows Mr. Henry's eyes closely following the light in the HGN test. *Id.* at 16:04–17:23. In the walk and turn test, Mr. Henry took 10 steps instead of nine and showed mild difficulty balancing during the instructions and the test itself. *Id.* at 17:47–19:36. In the one leg stand test, he showed moderate difficulty balancing. *Id.* at 19:38– 21:05.

In his Supplemental Report, Officer Komarovsky noted that he is trained to administer the three field sobriety tests and certified to operate the preliminary breath test machine. Officer Komarovsky wrote that he "did not observe clues on the HGN." Dkt. 120 at 20. On the walk and turn test, he wrote that Mr. Henry "was swaying during the instruction phase and kept moving his arms away from his hips in what appeared to be an attempt to maintain balance," then "walked 10 steps, improperly turned and walked back 9 steps," sometimes stepping off the line. *Id.* As to the one leg stand test, he noted that Mr. Henry "was hopping, swaying and initially lifted one foot off the ground before lifting another." *Id.* Officer Komarovsky's police report states that Mr. Henry's preliminary breath test results were 0.00 for blood alcohol content. *Id.* at 23:47–24:43.

Officer Komarovsky then told Mr. Henry he was under arrest for driving under the influence, placed him in handcuffs, and read him his *Miranda* rights. Dkt. 119-1 at 24:47–25:42. As Officer Komarovsky and Cellan walked Mr. Henry to the patrol vehicle, Mr. Henry became upset and began disputing his arrest. *Id.* at 25:45–26:08. The officers stopped Mr. Henry in front of the patrol vehicle and Officer Komarovsky tightened the handcuffs, patted Mr. Henry down, and emptied Mr. Henry's pockets. *Id.* at 25:56–27:36. The video shows Mr. Henry positioned such that his torso is at most lightly touching the vehicle. *Id.* It does not show either officer

pushing Mr. Henry against the vehicle during the pat down, or otherwise using more than de minimis force. *Id.*

In Officer Komarovsky's Supplemental Report, he wrote that he believed Mr. Henry was driving under the influence based on (1) the circumstances of the accident itself, wherein Mr. Henry ran a red light and crashed into another vehicle; (2) testimony of eyewitness Shane Woods, who said he observed Mr. Henry run the red light and crash into the other vehicle; (3) Mr. Henry's inconsistent answers regarding where he was coming from and his cannabis use; (4) Mr. Henry's performance on the field sobriety tests; and (5) Mr. Henry's possession of a disposable THC fluid cartridge (which was unopened). Dkt. 120 at 19–20. Officer Komarovsky also stated that Mr. Henry's voluntary preliminary breath test result was 0.00 but noted that this result "was observed to be inconsistent with the signs of impairment I was observing." *Id.* at 20. He described his interaction with Mr. Henry as follows:

> Throughout this initial interaction [Mr. Henry] appeared nervous, he was crossing his arms and his story was inconsistent. Initially saying he was downtown and when asked for specifics relaying he was around the casino (which is not in downtown Tacoma). I further observed his story to be inconsistent when he said he last smoked weed yesterday before changing it to a year ago and denying he usually smokes while having an obvious cartridge containing what appeared to be THC on his person.

*Id.* at 21.

After the officers secured Mr. Henry in the patrol vehicle, Officer Cellan described to Officer Komarovsky video footage of the accident captured on a neighbor's security camera: "[He] absolutely blew through a straight red." *Id.* at 28:27–29:05. She explained that Mr. Henry was sitting in front of the light and then "just blaze[d] through" it as vehicles were traveling through the green light on the perpendicular road. *Id.* at 28:30–28:48.

The body-worn camera footage later shows Mr. Henry exiting the patrol vehicle and walking with Officer Komarovsky to the holding cell at Tacoma Police Operations. *Id.* at 36:29–

38:21; Dkt. 120 at 22. Officer Komarovsky escorted Mr. Henry without touching him except to briefly guide him by the elbow, check whether he was wearing a belt, and remove his handcuffs. Dkt. 119-1 at 36:29–38:21. The video footage does not show Officer Komarovsky using more than de minimis force at any point during the walk from the patrol vehicle to the holding cell. *See id.*

While Mr. Henry waited in the holding cell, Officer Komarovsky applied for a search warrant to draw a blood sample for forensic testing. Dkt. 120 at 22. Officer Komarovsky stated in the warrant application that the following facts supported his belief that Mr. Henry was under the influence: (1) Mr. Henry "said he saw a green light and pushed the gas to go"; (2) Woods said he observed Mr. Henry run the red light and crash into the other vehicle; (3) Mr. Henry said he was coming from the casino area, and "denied having anything to drink but admitted to visiting a marijuana store. I asked him when he last smoked and he said yesterday before changing it to a year ago"; (4) Mr. Henry performed poorly on the walk and turn and one leg stand tests; (5) Mr. Henry's result on the preliminary breath test was 0.00, but this was "inconsistent with the signs of impairment I was observing"; and (6) Mr. Henry "had a disposable cartridge containing THC fluid." Dkt. 120 at 43–44. Pierce County Superior Court Judge Alicia Burton authorized a warrant, "find[ing] probable cause exists to authorize the warrant." *Id.*; Dkt. 120 at 48.

When Officer Komarovsky returned to the holding cell, he asked Mr. Henry if he would like to use the bathroom or get some water, and Mr. Henry responded by asking to use a phone. Dkt. 119-2 at 0:47–0:52. Mr. Henry proceeded to argue with Officer Komarovsky about using a phone while Officer Komarovsky told Mr. Henry to put his shoes on several times. *Id.* at 0:52–1:10. When he told Mr. Henry to put his shoes on for a fourth time, he said, "put your shoes on before I get a bunch of cops here and it becomes a whole lot worse." *Id.* at 1:06–1:10. Mr. Henry

complied. *Id.* at 1:10–1:18. Officer Komarovsky placed handcuffs on Mr. Henry's wrists; he then guided Mr. Henry from the holding cell to the patrol vehicle, holding him at times by his elbow. *Id.* at 1:18–3:12. Again, the video footage does not show Officer Komarovsky using more than de minimis force at any point during this interaction. *See id.*

Officer Komarovsky drove Mr. Henry to Allenmore Hospital for the blood test, and then to Pierce County Jail. Dkt. 120 at 22. Mr. Henry alleges that Officer Komarovsky shook him by the handcuffs in the jail garage: "Komarovsky put my handcuffs on very tight and shook me violently at the jail." Dkt. 119 at 73. Officer Komarovsky denies this allegation: "I did not shake Mr. Henry by his handcuffs nor do I recall doing anything he could interpret as shaking him by the handcuffs." Dkt 120 at 6. Officer Komarovsky testified that his camera was turned off inside the jail because he believed filming inside the county jail was prohibited. *Id.* at 7.

Mr. Henry stayed at the jail overnight and appeared in Tacoma Municipal Court the following day. Dkt. 119 at 79. The court found probable cause for the driving under the influence charge. *Id.* The charges were dismissed with prejudice on December 17, 2021 after receipt of the blood test results. *Id.* at 82.

### III.    DISCUSSION

**A.    Legal Standard**

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party is entitled to judgment as a matter of law when the nonmoving party fails to make a sufficient showing on an essential element of a claim in the case on which the nonmoving party has the burden of proof. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1985). A dispute as to a material fact is genuine "if the evidence is such that a reasonable jury could

return a verdict for the nonmoving party." *Villiarimo v. Aloha Island Air, Inc.*, 281 F.3d 1054, 1061 (9th Cir. 2002) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).

The evidence relied upon by the nonmoving party must be able to be "presented in a form that would be admissible in evidence." *See* Fed. R. Civ. P. 56(c)(2). "An affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." Fed. R. Civ. P. 56(c)(4); *see also* Fed. R. Ev. 602 ("A witness may testify to a matter only if evidence is introduced sufficient to support a finding that the witness has personal knowledge of the matter. Evidence to prove personal knowledge may consist of the witness's own testimony."). Conclusory, nonspecific statements in affidavits are not sufficient, and "missing facts" will not be "presume[d]." *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 889 (1990). However, "'[t]he evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in his favor.'" *Tolan v. Cotton*, 572 U.S. 650, 651 (2014) (per curiam) (quoting *Anderson*, 477 U.S. at 255). Consequently, "a District Court must resolve any factual issues of controversy in favor of the non-moving party only in the sense that, where the facts specifically averred by that party contradict facts specifically averred by the movant, the motion must be denied." *Lujan,* 497 U.S. at 888 (internal quotations omitted).

**B.      Officer Komarovsky had reasonable suspicion to prolong a traffic stop.**

Mr. Henry alleges that Officer Komarovsky suspected him of a crime and began to question him due to racial profiling. *See* Dkt. 65 at 6. "[A]n officer may prolong a traffic stop if the prolongation itself is supported by independent reasonable suspicion." *United States v. Evans*, 786 F.3d 779, 788 (9th Cir. 2015). "The reasonable suspicion standard is not a particularly high threshold to reach." *United States v. Valdes-Vega*, 738 F.3d 1074, 1078 (9th Cir. 2013). It is less than probable cause and "falls considerably short of satisfying a

preponderance of the evidence standard." *Id.* (quoting *United States v. Arvizu*, 534 U.S. 266, 274 (2002)). Courts must consider the totality of the circumstances when evaluating whether there was reasonable suspicion. *See id.* "Reasonable suspicion 'exists when an officer is aware of specific, articulable facts which, when considered with objective and reasonable inferences, form a basis for *particularized* suspicion.'" *Evans*, 786 F.3d at 788 (quoting *United States v. Montero–Camargo,* 208 F.3d 1122, 1129 (9th Cir. 2000) (en banc)). Further, the stop must be "reasonably related in scope to the justification for [its] initiation." *Terry v. Ohio*, 392 U.S. 1, 29 (1968).

Officer Komarovsky had reasonable suspicion that justified questioning Mr. Henry after hearing from witnesses that he caused the accident by driving through a red light. *See, e.g.*, *United States v. Hawley*, No. CR-09-0610 EMC, 2009 WL 3569179, *4 (N.D. Cal. Oct. 30, 2009) ("[T]he officers had reasonable suspicion that she was under the influence when she was involved in the auto accident."). Officer Komarovsky only began questioning Mr. Henry upon hearing from witnesses that Mr. Henry drove through a red light. And he only administered field sobriety tests after Mr. Henry altered his answers to questions about cannabis use, further establishing reasonable suspicion of driving under the influence. In addition, the stop was reasonable in scope. Officer Komarovsky only did that which was reasonably related to the justification for the investigation.

Mr. Henry's contention that Officer Komarovsky began the investigation due to racial profiling does not change this conclusion. A Fourth Amendment challenge to a traffic stop may not be based upon the subjective motivations of an individual officer. *See Whren v. United States*, 517 U.S. 806, 813 (1996). Instead, a challenge that an officer's conduct was racially discriminatory falls under the Equal Protection Clause. *Id.* ("[T]he constitutional basis for objecting to intentionally discriminatory application of laws is the Equal Protection Clause, not

the Fourth Amendment."). The Equal Protection Clause "prohibits selective enforcement of the law based on considerations such as race." *Id.*

To survive summary judgment on a Section 1983 claim for selective enforcement in violation of the Equal Protection Clause, Mr. Henry must show that the officers' conduct had both a discriminatory effect and a discriminatory purpose. *See Rosenbaum v. City & County of San Francisco*, 484 F.3d 1142, 1152 (9th Cir. 2007). To show discriminatory effect, Mr. Henry must establish that the officers did not question other similarly-situated individuals not in the plaintiff's protected class. *See United States v. Armstrong*, 517 U.S. 456, 465 (1996). "To show discriminatory purpose, a plaintiff must establish that 'the decision-maker' . . . selected or reaffirmed a particular course of action at least in part 'because of,' not merely 'in spite of,' its adverse effects upon an identifiable group." *Rosenbaum*, 484 F.3d at 1153 (quoting *Wayte v. United States*, 470 U.S. 598, 610 (1985)).

Mr. Henry has not presented any evidence showing discriminatory effect. He has not offered evidence showing that others who cause a traffic accident by running a red light are not questioned for driving under the influence. Nor has he presented evidence that others who run a red light and then inconsistently answer questions about drug or alcohol use and perform poorly on field sobriety tests are not arrested. Thus, Mr. Henry's claim that he was investigated due to racial profiling does not survive summary judgment.

## C.   Officer Komarovsky had probable cause to arrest.

Defendants argue that they are entitled to summary judgment as to the false arrest, unlawful imprisonment, and malicious prosecution claims because the officers had probable cause to arrest Mr. Henry. Dkt. 118 at 26, 29. "Arrest by police officers without probable cause violates the Fourth Amendment's guarantee of security from unreasonable searches and seizures, giving rise to a claim for false arrest under § 1983." *Caballero v. City of Concord*, 956 F.2d 204,

206 (9th Cir. 1992). "To prevail on [a] § 1983 claim for false arrest" and imprisonment, the plaintiff must "demonstrate that there was no probable cause to arrest him." *Norse v. City of Santa Cruz*, 629 F.3d 966, 978 (9th Cir. 2010) (en banc) (quoting *Cabrera v. City of Huntington Park*, 159 F.3d 374, 380 (9th Cir. 1998) (per curiam)).

To maintain a Section 1983 action for malicious prosecution, a plaintiff must show that "the defendants prosecuted [plaintiff] with malice and without probable cause, and that they did so for the purpose of denying [plaintiff a] specific constitutional right." *Smith v. Almada*, 640 F.3d 931, 938 (9th Cir. 2011) (quoting *Freeman v. City of Santa Ana*, 68 F.3d 1180, 1189 (9th Cir. 1995)). A plaintiff may bring a malicious prosecution claim against a police officer who wrongfully caused the prosecution. *Id.* As with false arrest and imprisonment, "probable cause is an absolute defense to malicious prosecution." *Lassiter v. City of Bremerton*, 556 F.3d 1049, 1054–55 (9th Cir. 2009).

Probable cause exists where "the facts and circumstances within [the officers'] knowledge and of which they had reasonably trustworthy information were sufficient to warrant a prudent man in believing that the [plaintiff] had committed or was committing an offense." *Hart v. Parks*, 450 F.3d 1059, 106–66 (9th Cir. 2006) (quoting *Bailey v. Newland*, 263 F.3d 1022, 1031 (9th Cir. 2001)); *see also Grant v. City of Long Beach*, 315 F.3d 1081, 1085 (9th Cir. 2002) ("Probable cause exists when under the totality of circumstances known to the arresting officers, a prudent person would have concluded that there was a fair probability that [the defendant] had committed a crime." (internal quotations omitted)).

Under Washington law, a person is guilty of driving under the influence of cannabis if the person drives a vehicle and: "[t]he person has, within two hours after driving, a THC concentration of 5.00 or higher as shown by analysis of the person's blood" *or* "while the person is under the influence of or affected by" cannabis. RCW 46.61.502(1). Washington law

authorizes police officers to arrest a person if they have probable cause to believe that person was driving under the influence in violation of RCW 46.61.502. RCW 10.31.100(3)(d). Here, Officer Komarovsky heard from two eyewitnesses that Mr. Henry caused a serious accident by proceeding through a red light after he was at a complete stop. Dkt. 119-1 at 2:50–3:14, 11:04–11:40. When Officer Komarovsky then questioned Mr. Henry, Mr. Henry gave inconsistent answers about where he was coming from, initially saying that he was coming from downtown, then near the casinos, and then disclosing that he came from purchasing cannabis. *Id.* 12:17–13:08. He also gave inconsistent answers to questions about when he last used cannabis, first saying he smoked the day before, and then saying "I didn't even smoke yesterday" and that the last time he smoked was a year ago. *Id.* When Officer Komarovsky conducted field sobriety tests, Mr. Henry demonstrated difficulty balancing on the walk and turn and one leg stand tests. *Id.* at 16:04–21:05. Although the preliminary breath test showed 0.00 blood alcohol content, that figure indicates a person's blood alcohol content, and not THC blood levels. *See* Dkt. 120 at 22. Moreover, one can be found guilty of driving under the influence of cannabis if the cannabis affects their driving even if their THC blood levels are below 5.00 ng/mL. *See State v. Fraser*, 199 Wash. 2d 465, 483, 509 P.3d 282 (2022).

Mr. Henry contends that Officer Komarovsky wrongfully arrested him because the later blood test results showed he was not under the influence of cannabis or any other substance. But these results were not available to Officer Komarovsky when he arrested Mr. Henry. *Acosta v. City of Costa Mesa*, 718 F.3d 800, 826 (9th Cir. 2013) ("An officer is entitled to immunity where a reasonable officer would believe that probable cause existed, even if that determination was a mistake.").

Mr. Henry argues that Officer Komarovsky should not have relied on Woods' description of the accident after hearing of the neighbor's video footage that discredited Woods' account that

he saw Mr. Henry drive past another vehicle to run the red light. Dkt. 130 at 4–5. But Officer Komarovsky only heard about the video footage after arresting Mr. Henry, and that footage of the accident corroborated testimony from both Woods and Woodard that Mr. Henry had run a red light. *See* Dkt. 119-1 at 2:50–3:14, 11:04–11:40. Whether Mr. Henry had been the first or second vehicle stopped at the red light before he ran it is not material to a finding of probable cause.

Officer Komarovsky had the following information when he arrested Mr. Henry: (1) witness testimony from Woods and Woodard that Mr. Henry caused a serious accident by driving through a red light; (2) Mr. Henry's inconsistent answers to questions about where he was coming from and his cannabis use; (3) Mr. Henry's poor performance on field sobriety tests (4) a preliminary breath test result showing Mr. Henry's blood alcohol content was 0.00; (5) a sealed cartridge of THC fluid found in Mr. Henry's pocket. When Officer Komarovsky applied for a warrant to withdraw blood for testing, he had the same evidence in addition to Officer Cellan's description of the neighbor's video of the accident corroborating Woods and Woodard's accounts that Mr. Henry ran a red light. This evidence establishes probable cause to believe Mr. Henry had committed the crime of driving under the influence, and Officer Komarovsky's decision to arrest and initiate charges against Mr. Henry did not violate the Fourth Amendment.

**D.      Alternatively, Officer Komarovsky is entitled to qualified immunity as to the false arrest, false imprisonment, and malicious prosecution claims.**

Even if Officer Komarovsky lacked probable cause, he is entitled to qualified immunity because Mr. Henry has not shown clearly established law that officers lack probable cause under the circumstances here. The defense of qualified immunity protects "police officers from § 1983 liability unless (1) the officers 'violated a federal statutory or constitutional right, and (2) the unlawfulness of their conduct was "clearly established at the time"' of the violation." *Perez v.*

*City of Fresno*, No. 22-15546, 2024 WL 1612028, at *3 (9th Cir. Apr. 15, 2024) (quoting

*District of Columbia v. Wesby*, 583 U.S. 48, 62–63 (2018)). Courts follow a "two-step sequence"

to analyze qualified immunity defenses:

> First, a court must decide whether the facts that a plaintiff has alleged or shown make out a violation of a constitutional right. Second, if the plaintiff has satisfied this first step, the court must decide whether the right at issue was "clearly established" at the time of defendant's alleged misconduct.

*Pearson v. Callahan*, 555 U.S. 223, 232 (2009) (internal citations omitted). Which step to

analyze first is an exercise of discretion "in light of the circumstances in the particular case at

hand." *Id.* at 236.

> 1.   *Mr. Henry has not identified clearly established law that Officer Komarovsky lacked probable cause.*

Although the Court has concluded that Mr. Henry has not shown a constitutional

violation, the Court also considers the second step. "A right is clearly established when it is

'sufficiently clear that every reasonable official would have understood that what he is doing

violates that right.'" *Perez*, 2024 WL 1612028, at *3 (quoting *Mullenix v. Luna*, 577 U.S. 7, 11

(2015) (per curiam)). Precedent need not be precisely analogous, but it "must have placed the

statutory or constitutional question beyond debate." *Id.* (quoting *Mullenix*, 577 U.S. at 12). The

clearly established law must be specific, rather than general, and "clear enough that every

reasonable official would interpret it to establish the particular rule the plaintiff seeks to apply."

*Id.* (quoting *Wesby*, 583 U.S. at 63). Mr. Henry "bears the burden to show that the contours of

the right were clearly established." *Clairmont v. Sound Mental Health*, 632 F.3d 1091, 1109 (9th

Cir. 2011).  "[A] government official is entitled to qualified immunity on a false arrest claim if a

reasonable officer in his position could have believed that probable cause existed." *Norse*, 629

F.3d at 978.

Mr. Henry has not identified any cases holding that officers with similar information lack probable cause. Nor is the Court aware of any controlling cases or a body of persuasive authority establishing, for example, that an officer cannot have probable cause based on similar evidence of impairment, such as witness testimony that a person's driving demonstrated abnormal behavior or poor judgement, inconsistent answers regarding drug or alcohol use, and difficulty balancing on field sobriety tests. "[A] reasonable officer in [Officer Komarovsky's] position could have believed that probable cause existed." *See Norse*, 629 F.3d at 978. Thus, Officer Komarovsky is entitled to qualified immunity.

**E.    Qualified immunity protects Officer Komarovsky from a judicial deception claim.**

To the extent Mr. Henry brings a judicial deception claim regarding the search warrant to draw his blood, that claim fails under the first prong of the qualified immunity doctrine. For a judicial deception claim to survive summary judgment, the plaintiff must show the defendants "deliberately or recklessly made false statements or omissions that were material to the finding of probable cause." *Ewing v. City of Stockton*, 588 F.3d 1218, 1223 (9th Cir. 2009). Materiality requires a demonstration "the magistrate would not have issued the warrant with false information redacted, or omitted information restored." *Smith v. Almada*, 640 F.3d 931, 937 (9th Cir. 2011) (quoting *Lombardi v. City of El Cajon*, 117 F.3d 1117, 1126 (9th Cir. 1997)).

To show qualified immunity does not protect a defendant from a judicial deception claim, the plaintiff must "1) make a 'substantial showing' of deliberate falsehood or reckless disregard for the truth and 2) establish that, but for the dishonesty, the challenged action would not have occurred." *Liston v. County of Riverside*, 120 F.3d 965, 973 (9th Cir. 1997). Materiality is a question for the court, whereas state of mind is a question for the jury. *Butler v. Elle*, 281 F.3d 1014, 1024 (9th Cir. 2002).

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

The Court must determine whether the warrant application would have established probable cause once the false statement or omission is corrected. *Bravo v. City of Santa Maria*, 665 F.3d 1076, 1084 (9th Cir. 2011) (citations omitted). "If probable cause remains after amendment, then no constitutional error has occurred" and qualified immunity applies. *Id.* Qualified immunity does not apply, however, if the court determines that the false statement or omission was material to the probable cause finding. *Chism v. Washington*, 661 F.3d 380, 393 (9th Cir. 2011) ("[I]f an officer submitted an affidavit that contained statements he knew to be false or would have known to be false had he not recklessly disregarded the truth . . . , he cannot be said to have acted in an objectively reasonable manner, and the shield of qualified immunity is lost.") (quoting *Hervey v. Estes*, 65 F.3d 784, 788–89 (9th Cir. 1995))).

Mr. Henry argues that Officer Komarovsky made material omissions in his warrant application by (1) not specifying that the vape cartridge in Mr. Henry's pocket was unopened; and (2) not explaining that Woods wrongly stated that Mr. Henry had driven around another car to run the red light. These two omissions are not material. The warrant application would have established probable cause even if it had included these two points of clarification. Mr. Henry's possession of a THC cartridge, opened or unopened, was not material to the finding of probable cause. There was enough to establish probable cause without the THC cartridge at all. With respect to Woods' statement, the warrant application also only included the part of Woods' statement that was consistent with the neighbor's video footage: "Woods stated he . . . observed [Mr. Henry] run the red light and crash into" the other vehicle. Dkt. 120 at 43. The warrant application did not include Woods' observation that Mr. Henry drove around another car at the light. *See id.* Although including that Woods had been mistaken about other details of the accident might have some bearing on his credibility, it is immaterial where the relevant fact he offered—that Henry ran the red light—is uncontested and was corroborated by video of the

collision. Further, Officer Komarovsky included the most important exculpatory evidence:

Mr. Henry's preliminary breath test result of 0.00 and Mr. Henry's HGN test results showing no

signs of impairment. Because probable cause to issue the warrant remains after amendment, no

constitutional violation has occurred. *See Bravo*, 665 F.3d at 1084.

**F.      Mr. Henry has failed to show sufficient evidence supporting his excessive force claims.**

Mr. Henry claims that the police officers used excessive force in violation of the Fourth

Amendment in the following ways (1) Officer Komarovsky placed handcuffs too tightly;

(2) both officers pushed Mr. Henry against the patrol vehicle; (3) Officer Komarovsky shook

Mr. Henry by the handcuffs; (4) Officer Komarovsky threatened to kill Mr. Henry by stating he

would "get a bunch of cops and make it a whole lot worse." Dkt. 119 at 33. Defendants argue

Mr. Henry has presented insufficient evidence of excessive force by either officer. Dkt. 118 at 8.

Courts analyze Fourth Amendment excessive force claims under the "objective

reasonableness" standard. *Graham v. Connor*, 490 U.S. 386, 388 (1989). To determine whether

the force was reasonable, courts "balance the 'nature and quality of the intrusion on the

individual's Fourth Amendment interests' against 'the countervailing government interests at

stake.'" *O'Doan v. Sanford*, 991 F.3d 1027, 1037 (9th Cir. 2021) (quoting *Miller v. Clark

County*, 340 F.3d 959, 964 (9th Cir. 2003)). Courts "consider the 'type and amount of force

inflicted' as well as '(1) the severity of the crime at issue, (2) whether the suspect posed an

immediate threat to the safety of the officers or others, and (3) whether the suspect was actively

resisting arrest or attempting to evade arrest by flight.'" *Id.* (quoting *Miller*, 340 F.3d at 964).

*1.      Tight handcuffing*

Mr. Henry claims that Officer Komarovsky acted with excessive force by placing

handcuffs on Mr. Henry too tightly when they were in front of the patrol vehicle. Dkt. 119 at 33,

38. Tight handcuffing can constitute excessive force in violation of the Fourth Amendment. *Wall v. County of Orange*, 364 F.3d 1107, 1112 (9th Cir. 2004). But the Ninth Circuit has held (in admitted contrast to the typical summary judgment analysis) that a plaintiff's testimony is not sufficient to support a tight handcuffing claim; the plaintiff must provide medical records or other evidence. *Arpin v. Santa Clara Valley Transp. Agency*, 261 F.3d 912, 922 (9th Cir. 2001); *see also Baker v. Clearwater County*, No. 22-35011, 2023 WL 3862511, at *3 (9th Cir. June 7, 2023) ("'[S]ummary judgment on a tight handcuffing . . . excessive force claim is merited if a plaintiff does not seek medical help or offer supporting documentary evidence' of more than nominal injury." (quoting *Reyes v. City of Santa Ana*, 832 F. App'x 487, 491 (9th Cir. 2020))). Where the Ninth Circuit has found evidence sufficient to support a claim of excessive force, the plaintiff suffered more than nominal injuries from the handcuffs or the police ignored the plaintiff's complaints about tight handcuffs. *Compare Wall*, 364 F.3d at 1112 (plaintiff suffered nerve injury in his wrist); *LaLonde v. County of Riverside*, 204 F.3d 947, 960 (9th Cir. 2000) (officers refused to loosen plaintiff's handcuffs when he complained); *Palmer v. Sanderson*, 9 F.3d 1433, 1436 (9th Cir. 1993) (plaintiff's bruises lasted for weeks); and *Hansen v. Black*, 885 F.2d 642, 645 (9th Cir. 1989) (plaintiff sought treatment for pain in finger and upper arm and bruises on wrist and upper arm) *with Reyes*, 832 F. App'x at 490–91 (memorandum holding plaintiff's allegations did not amount to excessive force where he "alleged that he sustained a 'little bruise' that did not result in black skin discoloration, indentations that lasted until the end of the day he was released from jail, and about two days of soreness").

Here, Mr. Henry has not presented medical records or other evidence of the tight handcuffing. The body-worn camera video, which depicts much of the handcuffing procedure, does not show evidence that the handcuffs were too tight or causing Mr. Henry pain. In addition, he has neither alleged that he suffered bruising, indentation, or other injury from the handcuffing,

nor has he alleged that he told the officers the handcuffs were too tight. *See* Dkt. 119 at 38–39. Mr. Henry's tight handcuffing claims thus fail because he has not alleged more than nominal injury and because he has not provided sufficient evidence under the Ninth Circuit's standard for handcuffing claims.

### 2.   *Pushing against patrol vehicle*

Mr. Henry also alleges that both officers acted with excessive force by shoving him against the patrol vehicle. Dkt. 119 at 33. But the body-worn camera video never shows either officer pushing or shoving Mr. Henry against the vehicle or otherwise using more than de minimis force to secure him. *See Scott v. Harris*, 550 U.S. 372, 380–81 (2007) (holding that courts should "view[] the facts in the light depicted by the videotape" where a videotape captures the events in question and "clearly contradicts the version of the story told by [a party].") Accordingly, it is beyond dispute of material fact that Defendants are entitled to summary judgment as a matter of law on Plaintiff's claim that he was pushed against the patrol vehicle with excessive force.

### 3.   *Shaking by handcuffs*

Mr. Henry alleges that Officer Komarovsky shook him by the handcuffs at the jail. Dkt. 119 at 33. But this claim is subject to the same analysis as the tight-handcuffing claim discussed above—it cannot proceed to trial based on Mr. Henry's testimony alone unless medical records or other documentary evidence show more than nominal injury. The only evidence supporting this claim is Mr. Henry's testimony, and he has not submitted medical records or any other evidence to show that he suffered more than nominal injury when Officer Komarovsky allegedly shook him. *Cf. Arpin*, 261 F.3d at 922 (holding plaintiff's testimony without medical records or other evidence insufficient to support tight handcuffing claim). Accordingly, there is

insufficient evidence to support a claim that Officer Komarovsky used excessive force by shaking Mr. Henry by the handcuffs.

### 4. Verbal threat

Finally, Mr. Henry claims that Officer Komarovsky used excessive force by threatening to kill Mr. Henry when he said he would "get a bunch of cops and make it a whole lot worse" if Mr. Henry did not put on his shoes. In context of the parties' entire interaction, which is captured on video, *see Scott*, 550 U.S. at 380–81, this statement cannot reasonably be interpreted as a threat to kill Mr. Henry, and the Court is not aware of any precedent that this type of statement standing alone constitutes excessive force. A reasonable juror could not conclude that this interaction violated the Fourth Amendment. *Compare Robinson v. Solano County*, 278 F.3d 1007, 1015 (9th Cir. 2002) ("The development of the law . . . now allows us to recognize as a general principle that pointing a gun to the head of an apparently unarmed suspect during an investigation can be a violation of the Fourth Amendment, especially where the individual poses no particular danger.").

Even if the Court were to accept Mr. Henry's assertion that Officer Komarovsky's language implied a threat to kill and amounts to a constitutional violation, Mr. Henry has not cited cases establishing that a similar threat amounts to excessive force in violation of the Fourth Amendment. Nor is the Court aware of precedent that "place[s] the statutory or constitutional question beyond debate." *Perez*, 2024 WL 1612028, at *3. Officer Komarovsky is thus entitled to qualified immunity.

### G. Mr. Henry has not put forth evidence supporting claims against Officer Cellan.

Mr. Henry claims that Officer Cellan participated in the false arrest violation. In a case alleging the same claims against multiple defendants, there must be specific allegations explaining what each defendant allegedly did wrong, rather than general allegations asserted

against them as a group. *Trusov*, 2023 WL 6147251, at *2; *see Evans v. Sherman*, 2020 WL 1923176, at *3 (E.D. Cal. Apr. 21, 2020) (noting that a plaintiff who "simply lumps all defendants together" makes it "impossible for the Court to draw the necessary connection between the actions or omissions" of the various defendants); *In re Nexus 6P Prod. Liab. Litig.*, 293 F. Supp. 3d 888, 908 (N.D. Cal. 2018) ("Plaintiffs must identify what action each Defendant took that caused Plaintiffs' harm, without resort to generalized allegations against Defendants as a whole." (quotation marks and citation omitted)); *Wright v. City of Santa Cruz*, No. 13–cv– 01230–BLF, 2014 WL 5830318, at *5 (N.D. Cal. Nov. 10, 2014) ("These allegations are inadequate because they lump all defendants together and fail to allege the factual basis for each defendant's liability.").

Mr. Henry does not point to any evidence showing that Officer Cellan made the decision to arrest him or prepared the warrant affidavit. Other than alleging that Officer Cellan helped push Mr. Henry against the patrol vehicle, Mr. Henry does not point to evidence showing that Officer Cellan participated in any other alleged incident of excessive force. The Court dismisses all claims against Officer Cellan for insufficient evidence.

**H.    The City cannot be liable under *Monell* because there is no underlying constitutional violation.**

Finally, the Court considers Mr. Henry's claims against the City of Tacoma. A municipality may not be sued under Section 1983 just because one of its employees inflicted an injury. *Long v. County of Los Angeles*, 442 F.3d 178, 1185 (9th Cir. 2006). To state a Section 1983 claim against a municipality, a plaintiff must allege facts that, if proven, would establish that a constitutional right was violated pursuant to a municipal policy or custom. *Cortez v. County of Los Angeles*, 294 F.3d 1186, 1188 (9th Cir. 2001) (citing *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690–91 (1978)). Because the Court has concluded there is not sufficient

evidence from which a jury could find an underlying constitutional violation, there can be no *Monell* claim against the City of Tacoma. *See Baker v. Clearwater County*, No. 22-35011, 2023 WL 3862511, at *3 (9th Cir. June 7, 2023) ("A *Monell* claim cannot survive without an underlying constitutional violation." (citing *City of Los Angeles v. Heller*, 475 U.S. 796, 799 (1986) (per curiam))). The Court thus dismisses all claims against the City.

## IV.    CONCLUSION

For the foregoing reasons, the Court GRANTS Defendants' motion for summary judgment (Dkt. 118) and DISMISSES all claims with prejudice. The parties' motions in limine (Dkt. 124, 137) are DENIED as moot. The Clerk is directed to enter judgment in favor of Defendants and close the case.

The Clerk is directed to send uncertified copies of this Order to all counsel of record and to any party appearing pro se at said party's last known address.

Dated this 24th day of April, 2024.

Tiffany M. Cartwright
United States District Judge